UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| ARON Z. LAX, | Case No. 1-25-45855 (ESS) |
| Debtor. | Hon. Elizabeth S. Stong |

-----------------------------------------------------------X

**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

**DATED AUGUST 26, 2026**

BALISOK & KAUFMAN, PLLC
Joseph Y. Balisok, Esq.
251 Troy Avenue
Brooklyn, New York 11213
Telephone: (718) 928-9607
Facsimile: (718) 534-9747
joseph@lawbalisok.com

*Attorneys for the Debtor and Debtor-in-Possession, Aron Z. Lax*

**THIS PLAN IS BEING PROPOSED BY THE DEBTOR AND IS ACCOMPANIED BY A DISCLOSURE STATEMENT DATED AUGUST 26, 2026. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. CREDITORS AND PARTIES IN INTEREST SHOULD READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.**

# DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

Aron Z. Lax, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby proposes the following chapter 11 plan of reorganization, dated August 26, 2026 (the "Plan"), pursuant to section 1121(a) of title 11 of the United States Code (the "Bankruptcy Code"). Reference is made to the Debtor's Disclosure Statement, dated August 26, 2026 and filed contemporaneously herewith (the "Disclosure Statement"), for a discussion of the Debtor's history, the Property, the claims asserted against the Debtor and the Property, the pending Adversary Proceeding, a liquidation analysis, and a summary of the Plan. All holders of Claims entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting.

The Plan is, in essence, a plan of orderly sale. It provides for the sale of the Debtor's residence at 1151 42nd Street, Unit 3, Brooklyn, New York, free and clear of all liens, claims and interests; the payment in full at Closing of the Allowed Secured Claim of the mortgage lender; the payment of $100,000.00 each to the Internal Revenue Service and the New York State Department of Taxation and Finance at Closing in full satisfaction of their asserted claims and liens; the payment in full of all Administrative Expense Claims, Priority Claims and General Unsecured Claims; and the retention by the Debtor of the balance of the Sale Proceeds.

## ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

1.1 Definitions. As used in the Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires. Any capitalized term used but

not defined herein that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to it therein.

**"Administrative Expense Claim"** means any Claim for costs and expenses of administration of the Chapter 11 Case allowed under sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) Professional Fee Claims; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930 ("U.S. Trustee Fees").

**"Adversary Proceeding"** means the adversary proceeding commenced by the Debtor in the Bankruptcy Court captioned *Aron Z. Lax v. United States of America on behalf of the Internal Revenue Service, et al.*, Adv. Pro. No. 26-01089 (ESS), seeking, among other things, a determination under sections 505 and 506 of the Bankruptcy Code of the validity, priority and extent of the tax liens asserted against the Property, a declaratory judgment that the Debtor is the sole owner of the Property, and an order compelling the transfer of legal title to the Property to the Debtor.

**"Allowed"** means with reference to any Claim, (a) a Claim that has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; (b) a Claim as to which a timely proof of claim has been filed and as to which no objection has been interposed within the time fixed by the Plan or by order of the Bankruptcy Court, or as to which any such objection has been determined by a Final Order in favor of the holder; (c) a Claim allowed by a Final Order or under the Plan; or (d) a Claim

allowed pursuant to a settlement approved by the Bankruptcy Court. Unless otherwise specified in the Plan or by order of the Bankruptcy Court, an Allowed Claim shall not include interest, penalties or fees accruing after the Petition Date.

**"Allowed Secured Claim"** means an Allowed Claim that is a Secured Claim.

**"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date and as thereafter amended to the extent applicable to the Chapter 11 Case.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York, or such other court as may have jurisdiction over the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Eastern District of New York, as in effect and applicable to the Chapter 11 Case.

**"Business Day"** means any day other than a Saturday, a Sunday or a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**"Cash"** means legal tender of the United States of America, including by wire transfer, certified check, bank check or attorney escrow/trust account check.

**"Cenlar"** means Cenlar FSB, as servicer for CitiMortgage, Inc., the holder and/or servicer of the Mortgage Loan, together with its successors and assigns.

**"Cenlar Secured Claim"** means the Secured Claim of Cenlar arising under the Mortgage Loan and evidenced by Proof of Claim No. 3 filed on December 24, 2025 in the amount of $751,040.36 as of the Petition Date, together with such post-petition interest, fees, costs and charges as are allowable under section 506(b) of

the Bankruptcy Code and the Mortgage Loan documents, less all post-petition payments (including Adequate Protection Payments) received by Cenlar, as finally determined by agreement of the Debtor and Cenlar or by Final Order of the Bankruptcy Court.

**"Adequate Protection Payments"** means the monthly payments of $2,900.00 made by the Debtor to Cenlar pursuant to the Stipulation and Order (I) Fixing Adequate Protection Payments, (II) Adjourning the Motion for Relief from the Automatic Stay, and (III) Providing for Loss Mitigation and Loan Modification, and any other post-petition payments made by the Debtor to Cenlar.

**"Chapter 11 Case"** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date and pending before the Bankruptcy Court as Case No. 1-25-45855 (ESS).

**"Claim"** means a "claim" as defined in section 101(5) of the Bankruptcy Code against the Debtor, the Estate or the Property.

**"Class"** means a category of holders of Claims or Interests as classified in Article III of the Plan.

**"Closing"** means the closing of the Sale of the Property pursuant to Article V of the Plan, at which title to the Property is conveyed to the Purchaser and the Sale Proceeds are received and disbursed in accordance with the Plan.

**"Closing Date"** means the date on which the Closing occurs.

**"Closing Costs"** means all customary and reasonable costs of the Sale payable at Closing, including the commission of the Real Estate Broker as approved by the Bankruptcy Court, title insurance and title company charges, recording fees,

attorney closing fees, any transfer or gains taxes not exempt under section 1146(a) of the Bankruptcy Code, condominium common charge arrears and transfer charges, adjustments and apportionments, and any other customary seller's closing costs.

**"Co-Executors"** means Moshe Leib Lax a/k/a Moishe Leib Lax, as Co-Executor, and Zlaty Schwartz, as Co-Executrix, of the Estate of Chaim Lax, deceased, and any successor fiduciary of the Estate of Chaim Lax.

**"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Debtor"** means Aron Z. Lax, the debtor and debtor-in-possession in the Chapter 11 Case, and, from and after the Effective Date, the Reorganized Debtor.

**"Disclosure Statement"** means the Debtor's Disclosure Statement with respect to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as it may be amended, modified or supplemented.

**"Disputed Claim"** means any Claim that is not an Allowed Claim, including any Claim as to which an objection or a request for estimation has been filed and not resolved by Final Order, and any Claim that is the subject of the Adversary

Proceeding until the Adversary Proceeding is resolved by Final Order or by settlement approved by the Bankruptcy Court.

**"Distribution"** means any payment or transfer made under the Plan to the holder of an Allowed Claim.

**"Effective Date"** means the first Business Day that is at least fourteen (14) days after the Confirmation Date on which (a) the Confirmation Order has become a Final Order, or, if a stay pending appeal has not been obtained, the Debtor elects in writing to waive the finality requirement, and (b) all conditions precedent to the effectiveness of the Plan set forth in Article IX have been satisfied or waived.

**"Estate"** means the estate created in the Chapter 11 Case pursuant to sections 541 and 1115 of the Bankruptcy Code.

**"Estate of Chaim Lax"** means the estate of Chaim Lax, deceased, who died on November 3, 2008, acting by and through the Co-Executors, to whom letters testamentary were issued by the Surrogate's Court of Kings County.

**"Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or seek reargument or rehearing has expired and no appeal, petition or motion is pending, or as to which any appeal, petition or motion has been resolved by the highest court to which it was taken.

**"General Unsecured Claim"** means any Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, or a Claim classified in Classes 1, 2 or 3, including, without limitation, the Claims

evidenced by Proof of Claim No. 1 (LVNV Funding, LLC) and Proof of Claim No. 2 (CACH, LLC).

**"IRS"** means the United States of America, acting by and through the Internal Revenue Service.

**"IRS Claim"** means any and all Claims of the IRS against the Debtor, the Estate or the Property, whether secured, priority or unsecured, including, without limitation, the Claim evidenced by Proof of Claim No. 4 filed on January 8, 2026 in the total amount of $69,103,195.31 (asserted as $69,075,037.12 secured, $26,240.69 priority and the balance unsecured), and any Claim, lien or interest asserted by the IRS against the Property on account of the tax liabilities of Chaim Lax, the Estate of Chaim Lax, or any person other than the Debtor.

**"IRS Settlement Payment"** means the payment of $100,000.00 in Cash to the IRS at Closing pursuant to Section 3.2 of the Plan.

**"Interest"** means the interest of the Debtor in the Property and in all other property of the Estate.

**"Judgment"** means the Judgment Upon Default in Appearance entered January 14, 2020 (Dear, J.) by the Supreme Court of the State of New York, County of Kings, in the consolidated actions *CitiMortgage, Inc. v. Moshe Leib Lax, et al.*, Index No. 504537/2013, and *Aron Lax v. Moshe Leib Lax, as Co-Executor, et al.*, Index No. 500173/2016, recorded in the Office of the City Register of the City of New York on July 2, 2020 as CRFN 2020000189645, which impressed a constructive trust upon the Property in favor of the Debtor, declared that the Co-Executors hold legal title to the Property in trust for the benefit of the Debtor, and directed the Co-

Executors forthwith to execute a deed conveying legal title to the Property to the Debtor.

**"Lien"** means any charge against or interest in property to secure payment of a debt or performance of an obligation, including any mortgage, judgment lien, tax lien, or statutory lien, and including, without limitation, any lien asserted under 26 U.S.C. §§ 6321 or 6324 or under the New York Tax Law.

**"Minimum Sale Price"** means a gross purchase price for the Property of not less than $1,550,000.00, or such lesser amount as (a) is sufficient to pay in full all Closing Costs and all Distributions required to be made at Closing under Articles II and III of the Plan and (b) is approved by the Bankruptcy Court after notice and a hearing.

**"Mortgage Loan"** means the loan evidenced by the note dated May 22, 2006 in the original principal amount of $375,000.00 made by Chaim Lax to Flagstar Bank, FSB, secured by the mortgage of even date recorded April 19, 2007 as CRFN 2007000202716, as reformed by the Quiet Title Judgment, and assigned to CitiMortgage, Inc. by assignment recorded October 12, 2012 as CRFN 2012000405412, bearing a loan number ending in 1943.

**"NYSDTF"** means the New York State Department of Taxation and Finance, and the People of the State of New York to the extent of any Claim or Lien asserted on behalf of the State of New York for taxes.

**"NYSDTF Claim"** means any and all Claims of NYSDTF against the Debtor, the Estate or the Property, whether secured, priority or unsecured, including any Claim, tax warrant, lien or interest asserted by NYSDTF against the Property on account

of the tax liabilities of Chaim Lax, the Estate of Chaim Lax, or any person other than the Debtor.

**"NYSDTF Settlement Payment"** means the payment of $100,000.00 in Cash to NYSDTF at Closing pursuant to Section 3.3 of the Plan.

**"Outside Closing Date"** means the date that is twelve (12) months after the Effective Date, as such date may be extended by order of the Bankruptcy Court for cause shown on motion of the Debtor, or by written agreement of the Debtor and Cenlar filed with the Bankruptcy Court.

**"Petition Date"** means December 5, 2025, the date on which the Debtor filed his voluntary petition for relief under chapter 11 of the Bankruptcy Code.

**"Plan"** means this chapter 11 plan of reorganization, including all exhibits and schedules hereto, as it may be amended, modified or supplemented from time to time in accordance with its terms and the Bankruptcy Code.

**"Priority Non-Tax Claim"** means any Claim entitled to priority under section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

**"Priority Tax Claim"** means any Claim of a governmental unit entitled to priority under section 507(a)(8) of the Bankruptcy Code, other than the IRS Claim and the NYSDTF Claim, which are classified and treated in Classes 2 and 3.

**"Professional Fee Claim"** means a Claim of a professional retained in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code for compensation or reimbursement of expenses under sections 328, 330 or 331 of the Bankruptcy Code.

**"Property"** means the real property and improvements commonly known as 1151 42nd Street, Unit 3, Brooklyn, New York 11219, being the condominium unit designated as Block 5592, Lot 2203 on the Tax Map of the City of New York, County of Kings, together with its undivided interest in the common elements of the 1151 42nd Street Condominium, which is the Debtor's principal residence.

**"Purchaser"** means the purchaser of the Property at the Sale.

**"Quiet Title Judgment"** means the Judgment Quieting Title to the Premises entered February 17, 2016 (Baynes, J.) by the Supreme Court of the State of New York, County of Kings, in *CitiMortgage, Inc. v. Moshe Leib Lax, et al.*, Index No. 202/2015, recorded July 12, 2016 as CRFN 2016000235955, which, among other things, reformed the legal description of the deed and the mortgage to encumber Unit 3 of the 1151 42nd Street Condominium and adjudged that the interests of all defendants therein, including the United States of America, the Internal Revenue Service and the New York State Department of Taxation and Finance, are subject and subordinate to the Mortgage Loan.

**"Real Estate Broker"** means the licensed real estate broker retained by the Debtor, with the approval of the Bankruptcy Court pursuant to section 327 of the Bankruptcy Code, to market and sell the Property.

**"Reorganized Debtor"** means the Debtor from and after the Effective Date.

**"Sale"** means the sale of the Property by the Debtor pursuant to Article V of the Plan and sections 363(b), 363(f), 1123(a)(5)(D), 1123(b)(4) and 1141(c) of the Bankruptcy Code, free and clear of all Liens, Claims, encumbrances and Interests,

with all Liens, Claims, encumbrances and Interests to attach to the Sale Proceeds in the order of their priority and to be satisfied as provided in the Plan.

**"Sale Proceeds"** means the gross proceeds of the Sale.

**"Schedules"** means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor in the Chapter 11 Case, as amended.

**"Secured Claim"** means a Claim that is secured by a Lien on property of the Estate to the extent of the value of the holder's interest in the Estate's interest in such property, as determined pursuant to section 506(a) of the Bankruptcy Code, or, in the case of the IRS Claim and the NYSDTF Claim, to the extent determined under the Plan, by settlement, or by Final Order in the Adversary Proceeding.

**"Settlement Payments"** means collectively, the IRS Settlement Payment and the NYSDTF Settlement Payment.

**"Taxing Authorities"** means collectively, the IRS and NYSDTF.

**"U.S. Trustee"** means the Office of the United States Trustee for Region 2.

1.2 Rules of Interpretation. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference to a document being in a particular form or on particular terms means that such document shall be substantially in such form or on such terms; (c) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (d) captions and headings are for convenience of reference only and shall not affect the interpretation of the Plan; and (e) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

1.3 Computation of Time. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.4 Exhibits. All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, U.S. Trustee Fees and Priority Tax Claims are not classified under the Plan and are treated as follows:

2.1 Administrative Expense Claims. Except to the extent that the holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full satisfaction, settlement and release of such Claim, Cash equal to the unpaid Allowed amount of such Claim on the later of (a) the Effective Date, (b) the Closing Date, and (c) the date on which such Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of the Debtor's affairs after the Petition Date (including condominium common charges, insurance premiums and utilities) shall be paid in the ordinary course in accordance with their terms. Except as otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Expense Claims (other than Professional Fee Claims, U.S. Trustee Fees and ordinary course obligations) must be filed and served no later than thirty (30) days after the Effective Date, failing which such Claims shall be forever barred.

2.2 Professional Fee Claims. All professionals retained in the Chapter 11 Case seeking compensation or reimbursement of expenses for services rendered through the Confirmation Date shall file final applications for allowance thereof no later than forty-five (45) days after the Effective Date. Allowed Professional Fee Claims shall be paid in Cash from the Sale Proceeds at Closing, or, if allowed after Closing, within ten (10) Business Days after the entry of the order allowing such Claims, to the extent not previously paid from any retainer held by such professional. The Debtor shall reserve from the Sale Proceeds at Closing an amount sufficient to pay all Professional Fee Claims that are pending or estimated but not yet Allowed. Fees for services rendered after the Confirmation Date may be paid by the Reorganized Debtor without further order of the Bankruptcy Court.

2.3 U.S. Trustee Fees. All fees payable under 28 U.S.C. § 1930(a)(6), together with any applicable interest, that have accrued through the Effective Date shall be paid in full on or before the Effective Date. Thereafter, the Reorganized Debtor shall pay all such fees as they come due, and shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly post-confirmation reports in the form required by the U.S. Trustee, until the earliest of the entry of a final decree closing the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7, or dismissal of the Chapter 11 Case.

2.4 Priority Tax Claims. Except to the extent that the holder of an Allowed Priority Tax Claim agrees to less favorable treatment, and except for the IRS Claim and the NYSDTF Claim, which are classified and treated in Classes 2 and 3, each holder of an Allowed Priority Tax Claim, if any, shall receive, in full satisfaction of such Claim, Cash equal to the Allowed amount of such Claim on the later of the Effective Date and the Closing Date, or as soon thereafter as is reasonably

practicable, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code. The Debtor is not aware of any Priority Tax Claim other than the priority portion of the IRS Claim.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1 Summary of Classification. Pursuant to sections 1122 and 1123(a) of the Bankruptcy Code, Claims and Interests are classified as set forth below. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is classified in another Class to the extent that any remainder of the Claim qualifies within the description of such other Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Cenlar Secured Claim (CitiMortgage, Inc. mortgage on the Property) | Unimpaired | No – deemed to accept |
| Class 2 | IRS Claim | Impaired | Yes |
| Class 3 | NYSDTF Claim | Impaired | Yes |
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Interests of the Debtor | Unimpaired | No – deemed to accept |

**3.2 Class 1 – Cenlar Secured Claim.**

(a) Classification. Class 1 consists of the Cenlar Secured Claim.

(b) Treatment. In full satisfaction, settlement, release and discharge of the Cenlar Secured Claim and of the Mortgage Loan, Cenlar shall be paid in full, in Cash, at Closing, from the Sale Proceeds, the entire Allowed amount of the Cenlar Secured Claim, including principal, accrued pre-petition and post-petition interest at the contract (non-default) rate of 7.00% per annum,

escrow advances, and such reasonable fees, costs and charges as are allowable under section 506(b) of the Bankruptcy Code and the Mortgage Loan documents, less all Adequate Protection Payments and other post-petition payments received by Cenlar, all as set forth in a written payoff statement to be delivered by Cenlar to the Debtor not less than ten (10) Business Days prior to the scheduled Closing Date. Cenlar shall retain its Lien on the Property until the Cenlar Secured Claim is paid in full at Closing, whereupon Cenlar shall deliver a satisfaction of mortgage in recordable form to the Purchaser's title company. Any dispute concerning the amount of the payoff shall be determined by the Bankruptcy Court, and the disputed portion shall be held in escrow by Debtor's counsel pending such determination without delaying the Closing.

(c) Pending Closing. From the Effective Date through the Closing Date the Debtor shall continue to make the Adequate Protection Payments to Cenlar on the fifteenth (15th) day of each month, shall maintain hazard insurance on the Property naming Cenlar as mortgagee, and shall pay all condominium common charges and other carrying charges of the Property as they come due. If the Closing has not occurred by the Outside Closing Date, Cenlar may, upon ten (10) days' written notice to the Debtor and Debtor's counsel and an opportunity to cure, file a declaration of default with the Bankruptcy Court, whereupon the automatic stay and the injunction under the Plan shall be vacated as to Cenlar and the Property without further order, and Cenlar may exercise its rights and remedies under

applicable non-bankruptcy law. Nothing herein shall preclude the Debtor and Cenlar from agreeing to a loan modification through the Bankruptcy Court's Loss Mitigation Program in lieu of the Sale, in which event the Debtor may seek to modify the Plan under section 1127 of the Bankruptcy Code.

(d) Impairment and Voting. Class 1 is Unimpaired under the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, Cenlar is conclusively presumed to have accepted the Plan and is not entitled to vote. Nothing in the Plan modifies the rights of Cenlar in contravention of section 1123(b)(5) of the Bankruptcy Code.

**3.3 Class 2 – IRS Claim.**

(a) Classification. Class 2 consists of the IRS Claim.

(b) Treatment. In full and final satisfaction, settlement, release and discharge of the IRS Claim and of any and all Liens, Claims and interests of the IRS in, to or against the Property, the Sale Proceeds, the Debtor and the Estate – whether arising from the tax liabilities of the Debtor, of Chaim Lax, of the Estate of Chaim Lax, or of any other person, and whether asserted under 26 U.S.C. § 6321, 26 U.S.C. § 6324, or otherwise – the IRS shall receive the IRS Settlement Payment of **$100,000.00** in Cash from the Sale Proceeds at Closing. The IRS Settlement Payment shall be applied first to the Allowed priority portion of the IRS Claim, if any, and then to the balance of the IRS Claim. Upon receipt of the IRS Settlement Payment, (i) all Liens of the IRS against the Property shall be deemed released, discharged and extinguished,

and the Property shall be conveyed to the Purchaser free and clear of any such Liens; (ii) the IRS shall, within fourteen (14) days after written request, deliver to the Debtor a certificate of discharge of property from federal tax lien pursuant to 26 U.S.C. § 6325(b), or such other release in recordable form as the Purchaser's title company may reasonably require, it being agreed that the Confirmation Order shall itself be sufficient evidence of such release for recording purposes; and (iii) the IRS shall be deemed to have withdrawn Proof of Claim No. 4 and shall receive no further Distribution under the Plan.

(c) Settlement. The treatment of Class 2 constitutes a settlement and compromise of the IRS Claim and of the Adversary Proceeding as against the IRS pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and the Confirmation Order shall constitute approval thereof. Upon the IRS Settlement Payment, the Adversary Proceeding shall be dismissed as against the IRS, with prejudice, except that the Bankruptcy Court shall retain jurisdiction to enforce the Plan and the Confirmation Order. If Class 2 votes to reject the Plan, the Debtor reserves the right (i) to seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the ground that the IRS Settlement Payment equals or exceeds the value of the IRS's Allowed Secured Claim, if any, as determined in the Adversary Proceeding or pursuant to section 506(a) of the Bankruptcy Code, and provides the IRS with the indubitable equivalent of its Allowed Secured Claim, and/or (ii) to modify the Plan pursuant to

section 1127 of the Bankruptcy Code to provide for the treatment of the IRS Claim in accordance with the Final Order entered in the Adversary Proceeding. Nothing in the Plan shall constitute an admission by the Debtor that the IRS holds any valid Claim against the Debtor or any valid Lien against the Property, and, absent the Effective Date, all rights, claims and defenses of the Debtor in the Adversary Proceeding are expressly reserved.

(d) Impairment and Voting. Class 2 is Impaired under the Plan, and the IRS is entitled to vote to accept or reject the Plan.

**3.4 Class 3 – NYSDTF Claim.**

(a) Classification. Class 3 consists of the NYSDTF Claim.

(b) Treatment. In full and final satisfaction, settlement, release and discharge of the NYSDTF Claim and of any and all Liens, tax warrants, Claims and interests of NYSDTF in, to or against the Property, the Sale Proceeds, the Debtor and the Estate – whether arising from the tax liabilities of the Debtor, of Chaim Lax, of the Estate of Chaim Lax, or of any other person – NYSDTF shall receive the NYSDTF Settlement Payment of **$100,000.00** in Cash from the Sale Proceeds at Closing. The NYSDTF Settlement Payment shall be applied first to the Allowed priority portion of the NYSDTF Claim, if any, and then to the balance of the NYSDTF Claim. Upon receipt of the NYSDTF Settlement Payment, (i) all Liens and tax warrants of NYSDTF against the Property shall be deemed released, discharged and extinguished, and the Property shall be conveyed to the Purchaser free and clear of any such Liens; (ii) NYSDTF shall, within

fourteen (14) days after written request, deliver to the Debtor a release of lien or satisfaction of warrant in recordable form as the Purchaser's title company may reasonably require, it being agreed that the Confirmation Order shall itself be sufficient evidence of such release for recording purposes; and (iii) NYSDTF shall receive no further Distribution under the Plan.

(c) Settlement. The treatment of Class 3 constitutes a settlement and compromise of the NYSDTF Claim and of the Adversary Proceeding as against NYSDTF pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and the Confirmation Order shall constitute approval thereof. Upon the NYSDTF Settlement Payment, the Adversary Proceeding shall be dismissed as against NYSDTF, with prejudice, except that the Bankruptcy Court shall retain jurisdiction to enforce the Plan and the Confirmation Order. If Class 3 votes to reject the Plan, the Debtor reserves the right (i) to seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the ground that the NYSDTF Settlement Payment equals or exceeds the value of NYSDTF's Allowed Secured Claim, if any, as determined in the Adversary Proceeding or pursuant to section 506(a) of the Bankruptcy Code, and provides NYSDTF with the indubitable equivalent of its Allowed Secured Claim, and/or (ii) to modify the Plan pursuant to section 1127 of the Bankruptcy Code to provide for the treatment of the NYSDTF Claim in accordance with the Final Order entered in the Adversary Proceeding. Nothing in the Plan

shall constitute an admission by the Debtor that NYSDTF holds any valid Claim against the Debtor or any valid Lien against the Property, and, absent the Effective Date, all rights, claims and defenses of the Debtor in the Adversary Proceeding are expressly reserved. To the extent NYSDTF has not filed a proof of claim in the Chapter 11 Case, the NYSDTF Settlement Payment is offered solely in consideration of the release of any Lien or interest NYSDTF may assert against the Property, and the Debtor reserves the right to seek a determination that NYSDTF holds no Claim or Lien whatsoever.

(d) Impairment and Voting. Class 3 is Impaired under the Plan, and NYSDTF is entitled to vote to accept or reject the Plan.

**3.5 Class 4 – General Unsecured Claims.**

(a) Classification. Class 4 consists of all General Unsecured Claims. The Debtor estimates that Allowed General Unsecured Claims total approximately $6,438.79, consisting of Proof of Claim No. 1 (LVNV Funding, LLC) in the amount of $1,085.01 and Proof of Claim No. 2 (CACH, LLC) in the amount of $5,353.78.

(b) Treatment. In full satisfaction, settlement, release and discharge of each Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive Cash equal to one hundred percent (100%) of the Allowed amount of such Claim, without post-petition interest, from the Sale Proceeds within thirty (30) days after the Closing Date, or, if later, within thirty (30) days after such Claim becomes an Allowed Claim.

(c) Impairment and Voting. Because holders of Class 4 Claims will not receive post-petition interest and will be paid only upon the Closing, Class 4 is Impaired under the Plan, and each holder of an Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

**3.6 Class 5 – Interests of the Debtor.**

(a) Classification. Class 5 consists of the Interests of the Debtor in the Property and in all other property of the Estate.

(b) Treatment. The Debtor shall retain all of his Interests. After payment in full at Closing of all Closing Costs, the Cenlar Secured Claim, the Settlement Payments, Allowed Administrative Expense Claims (including reserves for Professional Fee Claims and U.S. Trustee Fees), Allowed Priority Tax Claims, and the reserve for Allowed General Unsecured Claims, the balance of the Sale Proceeds shall be the sole property of the Debtor, free and clear of all Liens, Claims and Interests, and shall be remitted to the Debtor at Closing. On the Effective Date, all other property of the Estate shall vest in the Reorganized Debtor free and clear of all Liens, Claims and Interests, except as otherwise provided in the Plan.

(c) Impairment and Voting. Class 5 is Unimpaired, and the Debtor is conclusively presumed to have accepted the Plan.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

4.1 Voting Classes. Classes 2, 3 and 4 are Impaired and the holders of Allowed Claims in such Classes are entitled to vote to accept or reject the Plan.

4.2 Presumed Acceptance. Classes 1 and 5 are Unimpaired and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

4.3 Acceptance by a Class. An Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class that actually vote on the Plan.

4.4 Confirmation Notwithstanding Rejection – Cramdown. If any Impaired Class fails to accept the Plan, the Debtor requests that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code on the ground that the Plan does not discriminate unfairly and is fair and equitable with respect to each rejecting Class. Without limiting the foregoing, the Debtor submits that (a) with respect to Classes 2 and 3, the Settlement Payments provide the holders of such Claims with Cash equal to or exceeding the value of their Allowed Secured Claims, if any, and constitute the indubitable equivalent of such Claims within the meaning of section 1129(b)(2)(A)(iii), and (b) with respect to Class 4, holders receive payment in full of their Allowed Claims. The Debtor reserves the right to modify the Plan to the extent necessary to achieve confirmation under section 1129(b).

4.5 Elimination of Vacant Classes. Any Class that does not contain, as of the date of the Confirmation Hearing, a holder of an Allowed Claim or a Claim temporarily allowed for voting purposes shall be deemed eliminated from the Plan for purposes of voting and for purposes of determining acceptance or rejection of the Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1 Sale of the Property. The Plan shall be funded by and implemented through the Sale of the Property. The Confirmation Order shall authorize and direct the Debtor, without further

order of the Bankruptcy Court, to market and sell the Property at private sale, for a gross purchase price of not less than the Minimum Sale Price, on commercially reasonable terms, free and clear of all Liens, Claims, encumbrances and Interests pursuant to sections 363(b), 363(f), 1123(a)(5)(D), 1123(b)(4) and 1141(c) of the Bankruptcy Code, with all Liens, Claims, encumbrances and Interests to attach to the Sale Proceeds with the same validity, priority and extent as they attached to the Property, and to be paid, released or discharged at Closing as provided in the Plan. The Debtor shall file with the Bankruptcy Court and serve on Cenlar, the Taxing Authorities and the U.S. Trustee a notice of the proposed contract of sale, identifying the Purchaser and the purchase price, not less than fourteen (14) days prior to the Closing. Any Sale to an insider of the Debtor, or for less than the Minimum Sale Price, shall require the approval of the Bankruptcy Court after notice and a hearing. The Purchaser shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

5.2 Real Estate Broker; Marketing. Promptly after the Confirmation Date (or earlier, in the Debtor's discretion), the Debtor shall apply to retain the Real Estate Broker pursuant to section 327 of the Bankruptcy Code and shall list the Property for sale. The Debtor shall use good faith, diligent efforts to sell the Property and to close the Sale as soon as practicable and, in any event, on or before the Outside Closing Date. The Debtor shall file a status report with the Bankruptcy Court, and serve it on Cenlar, the Taxing Authorities and the U.S. Trustee, every sixty (60) days after the Effective Date until the Closing, describing the marketing efforts and any offers received.

5.3 Transfer of Legal Title; Execution of Deed. The Judgment adjudged that the Co-Executors hold bare legal title to the Property in constructive trust for the Debtor and directed them forthwith to execute a deed conveying legal title to the Debtor. In furtherance of the Judgment, and pursuant to sections 105(a), 1123(a)(5), 1141 and 1142(b) of the Bankruptcy Code:

(a) the Confirmation Order shall direct the Co-Executors, within fourteen (14) days after the Effective Date, to execute, acknowledge and deliver to Debtor's counsel a bargain and sale deed, together with all transfer tax returns and other instruments necessary for recording, conveying legal title to the Property to the Debtor, or, at the Debtor's election, directly to the Purchaser at Closing;

(b) if the Co-Executors fail to do so, the Confirmation Order shall provide, pursuant to section 1142(b) of the Bankruptcy Code and Rule 70 of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rule 7070), that the Debtor, or such other person as the Bankruptcy Court may designate, is authorized to execute and deliver such deed and instruments on behalf of and in the name of the Co-Executors and the Estate of Chaim Lax, and that such deed shall have the same force and effect as if executed by the Co-Executors; and, in addition, that the Confirmation Order, together with a certified copy of the Judgment, shall constitute a conveyance of legal title to the Property to the Debtor and shall be accepted for recording by the Office of the City Register of the City of New York as such;

(c) the Co-Executors, the Estate of Chaim Lax and any person claiming by, through or under them shall receive no Distribution on account of any interest in the Property, shall have no interest in the Sale Proceeds, and shall be permanently enjoined from asserting any interest in or Lien upon the Property or the Sale Proceeds; and

(d) nothing herein shall limit the relief sought in the Adversary Proceeding, and any judgment entered therein may be recorded and enforced in addition to, and not in substitution for, the Confirmation Order.

5.4 Closing; Disbursement of Sale Proceeds. At Closing, the Sale Proceeds shall be received by Debtor's counsel or the Purchaser's title company, as settlement agent, and shall be disbursed in the following order of priority, without further order of the Bankruptcy Court:

(a) *first*, to the payment of Closing Costs;

(b) *second*, to Cenlar, in payment in full of the Cenlar Secured Claim in accordance with Section 3.2;

(c) *third*, to the IRS, the IRS Settlement Payment of $100,000.00, and to NYSDTF, the NYSDTF Settlement Payment of $100,000.00, in accordance with Sections 3.3 and 3.4;

(d) *fourth*, to the payment of, or the reservation in the attorney trust account of Debtor's counsel of an amount sufficient to pay, all Allowed and estimated Administrative Expense Claims (including Professional Fee Claims and U.S. Trustee Fees through the anticipated closing of the Chapter 11 Case) and Allowed Priority Tax Claims, if any;

(e) *fifth*, to the reservation in the attorney trust account of Debtor's counsel of an amount sufficient to pay all Allowed and Disputed General Unsecured Claims in full in accordance with Section 3.5; and

(f) *sixth*, the balance to the Debtor.

5.5 Closing Statement. Within fourteen (14) days after the Closing Date, the Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee, Cenlar and the Taxing Authorities a closing statement reflecting the Sale Proceeds and all disbursements made at Closing.

5.6 Alternative Funding. Nothing in the Plan shall prohibit the Debtor, in lieu of the Sale, from funding all Distributions required to be made at Closing under the Plan from the proceeds of a refinancing of the Property, from contributions of third parties, or from other sources, in which event all references herein to the Closing and the Sale Proceeds shall apply, *mutatis mutandis*, to the closing of such transaction and the proceeds thereof, and the Debtor shall retain the Property. Any such alternative funding shall be disclosed to the Bankruptcy Court, Cenlar, the Taxing Authorities and the U.S. Trustee by notice filed not less than fourteen (14) days prior to such closing.

5.7 Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security, and the making or delivery of any instrument of transfer under the Plan, including, without limitation, the deed conveying legal title to the Property from the Co-Executors to the Debtor, the deed conveying the Property to the Purchaser at the Sale, and any mortgage given by the Purchaser or in connection with any refinancing under Section 5.6, shall not be subject to any stamp tax, real estate transfer tax, mortgage recording tax or similar tax, and the appropriate state and local governmental officials are directed to accept such instruments for recording without the payment of any such tax.

5.8 Vesting of Property of the Estate. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date all property of the Estate, including the Property and the Debtor's rights in the Adversary Proceeding, shall vest in the Reorganized Debtor free and clear of all Liens, Claims, encumbrances and Interests, except for the Lien of Cenlar and the Liens,

if any, of the Taxing Authorities, which shall attach to the Sale Proceeds and be satisfied at Closing as provided herein. From and after the Effective Date, the Reorganized Debtor may use, acquire and dispose of property and compromise or settle any Claims without supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

5.9 Post-Petition Earnings. Pursuant to section 1115 of the Bankruptcy Code, the Debtor's post-petition earnings and after-acquired property are property of the Estate. On the Effective Date, such earnings and property shall vest in the Reorganized Debtor, and the Reorganized Debtor shall be entitled to use the same without restriction, provided that the Reorganized Debtor shall apply such earnings as necessary to pay the Adequate Protection Payments, the carrying charges of the Property and U.S. Trustee Fees pending the Closing.

5.10 Continued Prosecution of the Adversary Proceeding. Unless and until the Settlement Payments are made, the Debtor shall continue to prosecute the Adversary Proceeding against the Taxing Authorities and the Co-Executors. The Debtor's claims and causes of action in the Adversary Proceeding, and all other claims and causes of action of the Debtor and the Estate, are expressly preserved and retained by the Reorganized Debtor pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and no such claim or cause of action is waived, released or discharged by the Plan except as expressly provided in Article III.

5.11 Management. From and after the Effective Date, the Reorganized Debtor shall continue to manage his own affairs and shall be responsible for implementing the Plan and making all Distributions required hereunder.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS AND RESOLUTION OF DISPUTED CLAIMS

6.1 Disbursing Agent. Balisok & Kaufman, PLLC, as counsel to the Debtor, shall serve as disbursing agent under the Plan, without bond, and shall make all Distributions required by the Plan from its attorney trust account or, with respect to Distributions made at Closing, through the settlement agent. The disbursing agent shall be entitled to reasonable compensation and reimbursement of expenses for such services as an Administrative Expense Claim.

6.2 Delivery of Distributions. Distributions to holders of Allowed Claims shall be made at the address set forth in the holder's proof of claim or, if no proof of claim was filed, at the address set forth in the Schedules, unless the holder has notified Debtor's counsel in writing of a change of address. Distributions returned as undeliverable shall be held for ninety (90) days, after which the Distribution shall revert to the Reorganized Debtor and the Claim shall be deemed satisfied and released.

6.3 De Minimis Distributions; Rounding. No Distribution of less than $25.00 need be made to any holder of an Allowed Claim unless a request therefor is made in writing. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent.

6.4 Setoff. The Reorganized Debtor may, but shall not be required to, set off against any Allowed Claim and the Distributions to be made on account thereof any claims, rights and causes of action of any nature that the Debtor or the Estate may hold against the holder of such Allowed Claim; provided that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release of any such claims, rights and causes of action.

6.5 Objections to Claims. Except as otherwise provided for Professional Fee Claims and Administrative Expense Claims, objections to Claims may be filed by the Debtor or the Reorganized Debtor at any time on or before the later of (a) ninety (90) days after the Effective Date and (b) sixty (60) days after the Closing Date, or such later date as may be fixed by the Bankruptcy Court on motion of the Reorganized Debtor. The Taxing Authorities' Claims shall be resolved as provided in Article III and in the Adversary Proceeding.

6.6 No Distributions Pending Allowance. No Distribution shall be made on account of a Disputed Claim unless and until such Claim becomes an Allowed Claim. The Reorganized Debtor shall reserve from the Sale Proceeds Cash sufficient to pay each Disputed Claim in the amount that would be distributable if such Claim were Allowed in full (or in such lesser amount as the Bankruptcy Court may estimate), and shall distribute such reserve, or the appropriate portion thereof, within thirty (30) days after the Disputed Claim becomes an Allowed Claim. Any reserve remaining after a Disputed Claim is disallowed shall be released to the Reorganized Debtor.

6.7 Late-Filed Claims. Except as otherwise provided by Final Order, any Claim for which a proof of claim was required to be filed by the applicable bar date and was not timely filed shall be disallowed and the holder thereof shall receive no Distribution.

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 Rejection. On the Effective Date, all executory contracts and unexpired leases of the Debtor, if any, that have not previously been assumed, assumed and assigned, or rejected by order of the Bankruptcy Court, and that are not the subject of a pending motion to assume as of the Confirmation Date, shall be deemed rejected pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code; *provided, however*, that any contract of sale for the Property entered into by the

Debtor, any listing agreement with the Real Estate Broker, the Debtor's insurance policies, and the condominium declaration and by-laws governing the Property shall not be rejected and shall remain in full force and effect. The Debtor is not aware of any executory contract or unexpired lease to which he is a party other than the foregoing.

7.2 Rejection Damages. Any Claim arising from the rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on Debtor's counsel within thirty (30) days after the Effective Date, failing which such Claim shall be forever barred. Any such timely filed Allowed Claim shall be treated as a Class 4 General Unsecured Claim.

## ARTICLE VIII

## EFFECT OF CONFIRMATION; DISCHARGE; INJUNCTION

8.1 Binding Effect. Upon the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all holders of Claims and Interests, the Co-Executors and the Estate of Chaim Lax, and their respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

8.2 Discharge of the Debtor. Because the Debtor is an individual, and in accordance with section 1141(d)(5) of the Bankruptcy Code, confirmation of the Plan shall not discharge any debt provided for in the Plan until the Bankruptcy Court grants a discharge upon the completion of all payments required under the Plan. Upon the Closing and the making of all Distributions required to be made at or following the Closing under Articles II and III, the Reorganized Debtor shall file a motion, on notice to the U.S. Trustee and all creditors, for entry of an order granting the Debtor a discharge of all debts pursuant to section 1141(d)(1) and (5) of the Bankruptcy Code, except as otherwise provided in section 1141(d)(2) and (6). The Debtor may also request that the

Bankruptcy Court grant a discharge before the completion of all payments for cause pursuant to section 1141(d)(5)(B). Upon entry of the discharge order, the Debtor shall be discharged from any and all Claims that arose before the Confirmation Date, including, without limitation, the IRS Claim and the NYSDTF Claim, to the fullest extent provided in section 1141(d) of the Bankruptcy Code.

8.3 Injunction. *The following injunction provision is set forth in specific and conspicuous language pursuant to Bankruptcy Rule 3016(c):*

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST THE DEBTOR OR INTERESTS IN THE PROPERTY — INCLUDING, WITHOUT LIMITATION, THE UNITED STATES OF AMERICA AND THE INTERNAL REVENUE SERVICE; THE NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; MOSHE LEIB LAX, AS CO-EXECUTOR, AND ZLATY SCHWARTZ, AS CO-EXECUTRIX, OF THE ESTATE OF CHAIM LAX, AND THE ESTATE OF CHAIM LAX; CENLAR FSB AND CITIMORTGAGE, INC.; LVNV FUNDING, LLC; AND CACH, LLC — ARE PERMANENTLY ENJOINED FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE PROPERTY OR THE SALE PROCEEDS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE PROPERTY OR THE SALE PROCEEDS ON**

**ACCOUNT OF ANY SUCH CLAIM OR INTEREST; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE PROPERTY OR THE SALE PROCEEDS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST; AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE THE DEBTOR OR THE REORGANIZED DEBTOR ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST — IN EACH CASE OTHER THAN TO ENFORCE THE RIGHT TO RECEIVE THE DISTRIBUTIONS PROVIDED FOR UNDER THE PLAN. THIS INJUNCTION DOES NOT APPLY TO CENLAR'S EXERCISE OF ITS REMEDIES FOLLOWING A DECLARATION OF DEFAULT UNDER SECTION 3.2(c) OF THE PLAN.**

Pending the entry of the discharge order described in Section 8.2, the foregoing injunction shall operate as a continuation of the automatic stay under section 362 of the Bankruptcy Code with respect to Claims provided for in the Plan.

8.4 Release of Liens. Except as otherwise provided in the Plan, upon the Closing and the making of the Distributions required to be made at Closing, all Liens against the Property shall be deemed fully released, satisfied and discharged, and the holders of such Liens shall execute and deliver such releases, satisfactions and certificates of discharge as the Purchaser's title company may reasonably require. The Confirmation Order shall authorize the Office of the City Register of the City of New York, and any other recording officer, to accept for recording the Confirmation Order as evidence of the release of all such Liens.

8.5 Exculpation. Neither the Debtor nor his professionals shall have or incur any liability to any holder of a Claim or Interest or any other party in interest for any act or omission

in connection with, relating to or arising out of the Chapter 11 Case, the Adversary Proceeding, the negotiation and filing of the Plan and the Disclosure Statement, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions constituting willful misconduct or gross negligence as determined by Final Order.

8.6 Term of Injunctions and Stays. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the entry of the discharge order described in Section 8.2.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

9.1 Conditions to Confirmation. The following are conditions precedent to confirmation of the Plan: (a) the Disclosure Statement shall have been approved by the Bankruptcy Court as containing adequate information; and (b) the Confirmation Order shall be in form and substance reasonably acceptable to the Debtor and shall include the provisions contemplated by Sections 5.1, 5.3, 5.7 and 8.4 of the Plan.

9.2 Conditions to Effectiveness. The following are conditions precedent to the occurrence of the Effective Date: (a) the Confirmation Order shall have been entered and shall have become a Final Order (unless waived by the Debtor); (b) all U.S. Trustee Fees then due shall have been paid; and (c) the Debtor’s counsel shall have been retained by order of the Bankruptcy Court.

9.3 Waiver of Conditions. The Debtor may waive any of the conditions set forth in Section 9.2 at any time, without notice or leave of the Bankruptcy Court, by filing a notice of waiver.

9.4 Effect of Non-Occurrence of the Effective Date. If the Effective Date does not occur within ninety (90) days after the Confirmation Date, or such later date as the Bankruptcy Court may order, then upon motion of the Debtor or any party in interest the Confirmation Order may be vacated, in which event the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claim by or against the Debtor, (b) prejudice in any manner the rights of the Debtor or any other party in interest, including in the Adversary Proceeding, or (c) constitute an admission, acknowledgment, offer or undertaking of any sort by the Debtor or any other party.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1 Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and the Adversary Proceeding to the fullest extent permitted by law, including, without limitation, jurisdiction to:

(a) hear and determine the Adversary Proceeding and any other pending or future adversary proceeding, contested matter or motion, including any action to determine the validity, priority or extent of any Lien asserted against the Property or the Sale Proceeds;

(b) hear and determine any objection to, or request for estimation of, any Claim, and to allow or disallow any Claim in whole or in part;

(c) hear and determine all applications for allowance of Professional Fee Claims and Administrative Expense Claims;

(d) approve the Sale, the retention of the Real Estate Broker, any contract of sale, and any dispute concerning the Closing, the disbursement of Sale Proceeds, or the payoff of the Cenlar Secured Claim;

(e) enter such orders as may be necessary to compel the execution and delivery of the deed and other instruments contemplated by Section 5.3, including orders pursuant to section 1142(b) of the Bankruptcy Code and Bankruptcy Rule 7070, and to enforce the Judgment as it relates to the Property;

(f) enforce the injunctions, releases and exculpation provisions of the Plan and the Confirmation Order, and the release of Liens provided for herein;

(g) hear and determine any motion to modify the Plan under section 1127 of the Bankruptcy Code, and to remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order;

(h) hear and determine any motion for relief from the automatic stay or the injunction under the Plan, including any declaration of default by Cenlar under Section 3.2(c);

(i) determine any matters arising under section 1146(a) of the Bankruptcy Code;

(j) hear and determine the Debtor’s motion for a discharge under section 1141(d)(5) of the Bankruptcy Code;

(k) hear and determine any matter relating to the interpretation, implementation, consummation or enforcement of the Plan or the Confirmation Order; and

(l) enter a final decree closing the Chapter 11 Case.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1 Modification of the Plan. The Debtor may alter, amend or modify the Plan at any time prior to the Confirmation Date in accordance with section 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to substantial consummation of the Plan, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan in accordance with section 1127(b) and (e) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

11.2 Revocation or Withdrawal. The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Plan is revoked or withdrawn, or if the Confirmation Order is not entered, the Plan shall be null and void, and nothing contained herein shall constitute a waiver or release of any Claims by or against the Debtor or prejudice in any manner the rights of the Debtor or any other person.

11.3 Post-Confirmation Reporting; Closing of the Case. The Reorganized Debtor shall file post-confirmation quarterly reports as required by the U.S. Trustee until the entry of a final decree. Upon the Closing, the making of all Distributions required to be made at or after Closing, and the resolution of all Disputed Claims, the Reorganized Debtor shall move for entry of a final decree closing the Chapter 11 Case.

11.4 Governing Law. Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to its principles of conflicts of law.

11.5 Severability. If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and the remainder of the terms and provisions of the Plan shall remain in full force and effect.

11.6 Successors and Assigns. The rights, benefits and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such person.

11.7 Notices. Any notice required or permitted to be given under the Plan shall be in writing and served by first-class mail and electronic mail, addressed to: (a) if to the Debtor, Balisok & Kaufman, PLLC, 251 Troy Avenue, Brooklyn, New York 11213, Attn: Joseph Y. Balisok, Esq. (joseph@lawbalisok.com); (b) if to Cenlar, David A. Gallo & Associates LLP, 47 Hillside Avenue, 2nd Floor, Manhasset, New York 11030, Attn: Robyn E. Goldstein, Esq., with a copy to Cenlar FSB, Attn: Bankruptcy Department, 425 Phillips Boulevard, Ewing, New Jersey 08618; (c) if to the IRS, Philip L. Bednar, Esq., Trial Attorney, U.S. Department of Justice, Tax Division, P.O. Box 55, Washington, D.C. 20044 (Philip.L.Bednar@usdoj.gov), with a copy to Internal Revenue Service, Centralized Insolvency Operation, P.O. Box 7346, Philadelphia, Pennsylvania 19101-7346; (d) if to NYSDTF, New York State Department of Taxation and Finance, Bankruptcy Section, P.O. Box 5300, Albany, New York 12205-0300, with a copy to the Office of the Attorney

General of the State of New York; and (e) if to the U.S. Trustee, Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 510, New York, New York 10004.

11.8 Headings. The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

11.9 Controlling Document. In the event of any inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

11.10 Reservation of Rights. Neither the filing of the Plan nor any statement or provision contained herein or in the Disclosure Statement, nor the taking of any action by the Debtor with respect to the Plan, shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to any Claim or Interest, or in the Adversary Proceeding, prior to the Effective Date.

Dated: Brooklyn, New York
August 26, 2026

ARON Z. LAX
Debtor and Debtor-in-Possession

/s/ Aron Lax
Aron Z. Lax

BALISOK & KAUFMAN, PLLC
*Attorneys for the Debtor and Debtor-in-Possession*
By: /s/ Joseph Y. Balisok
Joseph Y. Balisok, Esq.
251 Troy Avenue
Brooklyn, New York 11213
Telephone: (718) 928-9607
joseph@lawbalisok.com